IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RCN TELECOM SERVICES, INC.    :     CIVIL ACTION
                                          :
                                          :
       v.                   :
                                          :     NO. 07-CV-03057
                                          :
TOA PA VI, L.P.                 :

**<u>MEMORANDUM OPINION AND ORDER</u>**

GOLDEN, J.                                                AUGUST 12, 2008

        Plaintiff, RCN Telecom Services, Inc. ("RCN") brought this action against Defendant, Traditions of America ("TOA"), claiming that TOA is in violation of the Cable Communications Policy Act of 1984 ("the "Cable Act"), 47 U.S.C. §§ 521 <u>et seq.</u> (Count One) and in tortious interference with RCN's prospective contractual relations with residents of TOA's subdivsion's (Count Two). Specifically, RCN claims TOA has violated Section 621(a)(2) of the Cable Act by requiring RCN to pay a trenching fee before it will permit RCN to install its cable system in the dedicated public utility easements in TOA's subdivision. RCN seeks declaratory relief to the effect that it does not have to pay a trenching fee as a condition to have access to the easements. TOA has asserted a counterclaim against RCN, seeking a declaration that RCN has to pay at least its pro rata share of a trenching fee in order to gain access to said public utility easements. Presently before the Court is RCN's Motion for Partial Summary Judgment and TOA's Motion for Summary Judgment. For the reasons which follow, RCN's motion is granted and TOA's motion is denied.

The parties have stipulated to the following facts:

1.   RCN   is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and maintaining its principal place of business at 1525 Valley Center Parkway, Bethlehem, PA 18018.

2.  TOA is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, and maintaining its principal place of business at One Saucon Drive, Bethlehem, Pennsylvania 18015.

3. TOA is in the business of, among other things, the purchase of land and construction of residential developments.

4. TOA is the owner of a 66.1904 acre tract of land located at the southwest corner of Jaindl Boulevard and Township Line Road, in Hanover Township, Northampton County, Pennsylvania ("subject property").

5.TOA is in the business of developing the subject property as "Traditions of America at Hanover," a 241-unit subdivision consisting of single-family dwellings and attached dwellings.

6. In developing Traditions of America at Hanover, TOA is subject to section 159-23(B) of the Subdivision and Land Development Ordinance of Hanover Township, which provides in part as follows:

> Electrical and gas utilities easement. Easements for the installation of underground facilities for electric power, telephone, television, cable, and gas lines shall be provided, when necessary, so that each lot or leased unit can be practically served.

7. Further, TOA is subject to Section 159-23(A) of the Subdivision and Land Development Ordinance of Hanover Township, which provides as follows:

> All electrical utilities, including electric power, telephone and television cable lines, shall be placed underground, where feasible. The installation of underground facilities for all utilities shall be performed in accordance with the current standards of the utility company(ies) serving the subdivision.

8. The utility trenches must be constructed in strict conformity with the Trenching & Backfilling by Customer/Joint Trench Customer Reference Specification, No. 6-14-122, dated May 31, 2002, of PPL Electric Utilities Corporation.

9. The subdivision plan for Traditions of America at Hanover designates utility easements on each of the lots in the subdivision.

10. The utility easements have been dedicated to public use, in that the Defendant has offered them for public use and Hanover Township, by approving the subdivision, has accepted this offer on behalf of the public.

11. The utility easements designated on the subdivision plan for Traditions of America at Hanover contemplate use by utility companies, telecommunication service providers and cable television operators.

12. The planned trenches to be excavated within the utility easements at the Traditions of America at Hanover are capable of accommodating cable television facilities installed by more than one cable television operator.

13. RCN and Service Electric Cable Television, Inc. ("Service Electric") are cable service providers to the residents of Hanover Township, Northampton County, Pennsylvania. RCN Telecom Serives, Inc. v. DeLuca Enterprises, Inc., 413 F.Supp. 2d 464, 467 (E.D.Pa. 2005).

14. TOA will construct trenches in easements in the Development which have been dedicated to the public for uses compatible with cable service facilities. "Compatible uses" include

uses for other utitlity transmissions, such as gas, electricity, or telephone service. <u>RCN</u>, 413 F.Supp. 2d at 469.

15. The Hanover Township Board of Supervisors granted final approval of the subdivision plan for Traditions of America at Hanover on January 23, 2007.

16. The approved subdivision plan for Traditions of America at Hanover was recorded in the Northampton County Recorder of Deeds Office on March 15, 2007, in Plan Book Volume 2007-5, page 105.

17. TOA has commenced the construction of dwellings and site improvements for Traditions of America at Hanover.

18. TOA will commence the excavation of trenching for the installation of utilities on or after September 20, 2007.

19. RCN is in the business of providing telecommunication services to the public, including telephone, cable television, and internet services.

20. Service Electric is in the business of providing telecommunication services to the public, including telephone, cable television and internet services.

21. Verizon is in the business of providing telecommunication services to the public, including telephone, cable television and internet services.

22. RCN has been granted a franchise to provide cable television services to residents of Hanover Township.

23. Service Electric has been granted a franchise to provide cable television services to residents of Hanover Township.

24. Verizon has not been granted a franchise to provide cable television services to residents of Hanover Township.

25. J.B. Reilly, Managing Director of TOA, wrote a letter to Harold Haas, Sales Manager for Service Electric, dated May 24, 2007, concerning the installation of cable service facilities in the trenches to be excavated in the utility easements at the Traditions of America at Hanover. Exhibit B to Agreed Stipulation of Facts

26. TOA and Service Electric are negotiating an agreement concerning Service Electric's payment of a trenching fee to TOA as partial reimbursement of the cost of excavating the utility trenches for the installation of Service Electric's cable facilities at Traditions of America at Hanover.

27. J.B. Reilly, managing Director of TOA, wrote a letter to Marcy Gilbert, Strategic Account Manager for RCN, dated may 24, 2007, concerning the installation of cable service facilities in the trenches to be excavated in the utility easements at the Traditions of America at Hanover. Exhibit C to Agreed Stipulation of Facts

28. Marcy Gilbert wrote a letter to J.B. Reilly, dated June 4, 2007, concerning the installation of cable service facilities in the trenches to be excavated in the utility easements at the Traditions of America at Hanover. Exhibit D to Agreed Stipulation of Facts.

29. David Biddison, Esq, General Counsel to TOA, wrote a letter to Marcy Gilbert dated June 20, 2007, concerning the installation of cable service facilities in the trenches to be excavated in the utility easements at the Traditions of America at Hanover. Exhibit E to Agreed Stipulation of Facts.

30. Thomas Caffrey, Esq., counsel for RCN, wrote a letter to Attorney Biddison, dated July 10, 2007, concerning the installation of cable services in the trenches to be excavated in the utility easements at the Traditions of America at Hanover. Exhibit F to Agreed Stipulation of Facts.

31. The Pennsylvania Power and Light Company ("PPL") will provide electric power to residents of Traditions of America at Hanover. TOA is not requiring PPL to pay a portion of the costs of the trenching for the installation of its facilities in the utility easements at Traditions of America at Hanover. PPL is not governed by the Cable Communications Policy Act of 1984.

32. Verizon will install telephone facilities in the utility trenches at Traditions of America at Hanover. Verizon does not have a franchise agreement that permits it to provide cable television services to residents of Hanover Township. TOA is not requiring Verizon to pay a portion of the costs of the trenching for the installation of its telephone service facilities in the utility easements at Traditions of America at Hanover. Verizon is not governed by the Cable Act as a telephone service provider.

33. UGI, Inc. will install its natural gas facilities in the utility trenches at the subject property at its own expense.

34. TOA will permit RCN to install its cable television facilities in the utility easements of Traditions of America at Hanover to be excavated by TOA. TOA has permitted RCN to dig its own trenches at its own expense.

35. On July 26, 2007, RCN commenced the within litigation by filing a Complaint.

36. On August 20, 2007, TOA filed an Answer to the Complaint with Affirmative Defense and Counterclaim.

37. RCN filed a Motion for Preliminary Injunction on July 26, 2007. On August 20, 2007, after the parties agreed to enter into a stipulation for a scheduling order, RCN withdrew its Motion for Preliminary Injunction.

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment a s a matter of

law." Federal Rule of Civil Procedure 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. <u>Matsushita Elec.Indus.Co., Ltd v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In view of the parties' stipulation of facts, the Court finds there are no genuine issue as to any material fact and this case is suitable for summary disposition.

While RCN argues that TOA has violated Section 621(a)(2) of the Cable Act by requiring RCN to pay a trenching fee before granting RCN access to TOA's dedicated utitlity easements, TOA argues that Section 621(a)(2)(B) of the Cable Act expressly permits the property owner to charge a cable operator such as RCN a trenching fee for the purpose of reimbursing the property owner for the cost of opening trenching for the dedicated utility easements in which the cable system will be installed.[1] RCN responds that there is absolutely no language in Section 621(a)(2) which would require RCN to pay a trenching fee before it could gain access to dedicated public utility easements.

Section 621(a)(2) of the Cable Act states:

---

[1] TOA contends that the Cable Ordinance of the Township of Hanover, Northampton County, Pennsylvania, which was enacted to implement the Cable Act, also expressly requires RCN to pay a trenching fee in order to gain access to the dedicated public utility easements. Section 61-31 of the Cable Ordinance provides, in pertinent part:

Any franchisee who constructs a cable system through easements shall ensure that:
.......

B. The cost of installation, construction, operation or removal of such facilities be borne by a franchisee or subscriber, or a combination of both.

.......

(2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated to compatible uses, except that in using such easements the cable operator shall ensure–

    (A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

    (B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

    (C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation or removal of such facilities by the cable operator.

47 U.S.C. § 541(a)(2).

      The parties have not cited and our research has not disclosed any case which has considered whether subparagraph(B) requires a cable operator to pay a trenching fee in order to gain access during original construction of the trenches to a dedicated utility easement.[2] Therefore, the issue is one of first impression.

      Since Section 621(a)(2) of the Cable Act does not specifically use the word "trenches", let alone state that the cable operator must pay the cost of the trenches, resolution of the issue turns on what is meant by the term "such facilities" contained in subparagraph (B). TOA argues that the term "such facilities" includes the trenches dug for the cable system, while RCN argues that it does not.

---

    [2] In the only reported case in which a court has addressed the question of whether a developer may charge a cable operator a trenching fee, the Court decided the issue solely on the basis that the cable operator was seeking access to a private easement which was not regulated by the Cable Act as opposed to a public easement which is regulated by the Cable Act. See Daniels v. Cablevision, Inc. v. San Elijo Ranch, Inc., 158 F.Supp. 2d 1178 (S.D. Ca. 2001). The Court found that since the cable operator was seeking access to a private easement, the developer could charge the cable operator a trenching fee. The Court did not consider subparagraph(B) in reaching its decision.

Unfortunately, the term "such facilities" in subparagraph (B) is not defined in the Cable Act. However, when Section 621(a)(2) is read as a whole, it becomes obvious that the term "such facilities" in subparagraph (B) refers to the term "facilities necessary for a cable system" contained in subparagraph (A). Unfortunately, the term "facilities necessary for a cable system" is also not defined in the Cable Act. The term "cable system" is defined in the Cable Act as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception and control equipment that is designed to provide cable service...to multiple subscribers in the community..." 47 U.S.C. § 522(7).

The Court agrees with RCN that the term "facilities necessary for a cable system" can only refer to the cables, wiring and other equipment that permits the cable system to function and not the trenches dug for the cable system. After all it is only the equipment that permits the cable system to function which could be "installed", "constructed", "operated" or "removed" as those terms are commonly understood. Obviously, a trench, while perhaps capable of being "constructed", is not capable of being "installed" "operated" or "removed".

In addition, a trench is not a "facility necessary for a cable system." Although Hanover Township requires that all cable systems be installed underground, it is common knowledge that cable systems can also be installed above ground, thus obviating the need for any trenches. Since cable systems are capable of being installed in easements above ground, a trench can hardly be considered as a "facility necessary for a cable system."

The Court notes that the language of Section 621(a)(2) distinguishes between a "cable system" and the "easements" in which the cable system will be placed. The provision makes the cable operator responsible specifically for the cost of the "facilities necessary for a cable system." There is no language in the provision which states that the cable operator is responsible for the costs

of the easements themselves. If Congress had wanted the cable operator to pay for the cost of digging the trenches for the easements, it could have used language requiring the cable operator to pay the cost of the "facilities necessary for the easements." The fact that Congress chose not to use such language is determinative.

Finally, the Court notes that TOA permits PPL, the electric company, and Verizon, the phone company, unimpeded access to the dedicated utility easements, but will not allow RCN, the cable provider access unless it pays a trenching fee. Section 601(6) of the Cable Act specifically provides that a primary purpose of the Cable Act is to "promote competition in cable communications and minimize unnecessary regulation that would impose an undue burden on cable systems." The legislative history of the Cable Act is also clear. "Any private arrangements which seek to restrict a cable system's use of such easements and rights of way which have been granted to other utilities are in violation of this section and are not enforceable." H.Rep.No. 934, 98th Cong. 2d Sess. 19, 59 (1984), reprinted in U.S. Code Cong. & Ad. News 4655, 4656, 4696. At least three Courts have found such private arrangements violate the Cable Act. See, Centel Cable Television Company of Florida v. Thomas J. White Development Corporation, 902 F.2d 905 (11th Cir. 1990). (Developer's arrangement to allow electric and telephone utilities unimpeded access to private roads in subdivision to access utility easements, while prohibiting cable operator from access to such easements found to be in violation of Cable Act); Centel Cable Television Company of Florida v. Burg & DiVosta Corporation, 712 F.Supp. 176 (S.D.Fl. 1988)(Developer's arrangement to require cable operator to execute a right-of-entry agreement before being permitted access to utility easements, while not imposing same requirement on electric and telephone companies found to be in violation of Cable Act); Heritage Cablevision of Californis, Inc. v. J.F. Shea Company, Inc., 1990 U.S. Dist. LEXIS 18811 (N.D.Ca. 1990)(a cable operator's right of access under Section 621(a)(2)

"entitles [the cable operator] to enter the joint trenches and public buildings...[and] the [cable operator] "is entitled to go wherever the service cables of cable competitors and the utilities are allowed to go").

Contrary to TOA's contention, the fact that the Cable Act does not specifically regulate electric and phone utilities did not prevent these Courts from striking down the developer's arrangements in each case. Nor did the court's decision turn on whether the agreements between the developer and the electric and telephone utilities were formalized. Rather, an informal arrangement between the developer and the electric and telephone utilities was all that was necessary for the Court to find a violation of the Cable Act.

In sum, had TOA not chosen to dedicate its utility easements to public use, it would have been free to charge any or all of the utilities, including a cable operator such as RCN, a trenching fee.  However, once TOA dedicated its utility easements for public use, TOA made its property subject to the Cable Act and, therefore, could not require RCN, the cable operator, to pay a trenching fee before it could have access to the utility easements while giving PPL, the electric company, and Verizon, the phone company, unimpeded access.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RCN TELECOM SERVICES, INC. :  CIVIL ACTION
            :
            :
   v.        :
            :  NO. 07-CV-03057
            :
TOA PA VI, L.P.       :

**O R D E R**

    AND NOW, this 12th day of August, 2008, upon consideration of the Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment and following oral argument on said motions, it is hereby ORDERED that:

    1. The Defendant's Motion for Summary Judgment [Doc. #12] is DENIED.

    2. The Plaintiff's Motion for Partial Summary Judgment [Doc. #13] is GRANTED.

    3. Judgment is ENTERED in favor of Plaintiff and against Defendant on Count One of the Complaint.

    4. The Court declares that RCN is entitled, without payment of a trenching fee or any other cost not authorized by the Cable Act, to access the dedicated public utility easements at Traditions of America at Hanover, so as to permit RCN to install cable television facilities necessary to provide cable television services to residents of the subdivision.

    5. Judgment is ENTERED in favor of RCN Telecom Services, Inc. and against Defendant TOA PA VI, L.P. on TOA's counterclaim.

6. Plaintiff shall advise the Court within 10 days of the date of this Order whether it plans to proceed with Count Two of its Complaint.


BY THE COURT:


_/s/ THOMAS M. GOLDEN_
THOMAS M. GOLDEN, J.